Council for Appellant, please approach and proceed. May it please the Court, and good morning, Your Honors. My name is Dan Bonnett. I represent the appellant, Kendra Wrightsell. I'd like to thank the Court for hearing an argument on this case. There are multiple issues that were raised in this appeal. Two, we contend, have substantial significance to the employment bar, well beyond the parameters of this case, and they are the mitigation issue and the attorney's fees issues under the FMLA. The merits and equitable are equally important, but given the allotted time, I will reserve comment on that unless the Court has specific questions. It's our position on the mitigation issue that the circuit needs to make clear that the standard here in this case for voluntary resignations for a post-employment resignation, in this case after the plaintiff left Funding is not a hard stop. It's not a per se standing alone basis to cut off back pay. There are cases that talk about the fact that one size fits all is not the appropriate standard. If that is the standard in the Ninth Circuit, we ask the Court to overturn it because it's too draconian. There are bases for which an employee who leaves post-termination employment has reasons, and those reasons were enumerated here in detail during the course of the trial. How would we write that? What would we say in terms of how a court is supposed to determine when the mitigation efforts are not satisfactory? How would we gauge that then if we don't have a hard stop rule? I've given a lot of thought to that, and I wish I had a bullet answer, but I think it's important here to keep in mind that when you look at this through the lens of the overall burden on the defendant to prove mitigation, then we can then perhaps parse what happens. Initially, somewhat similar to a McDonnell-Douglas-Burdine shifting perhaps, there has to be some reason stated by the plaintiff why she left. And here she's stated a number of reasons why she left. Once that happens, once that standard is articulated, then the burden should shift to the party that has the ultimate burden on mitigation to present evidence in the record why that's not sufficient, why that's not sufficient justification. And here, there was none. They didn't challenge her Crohn's disease. They didn't challenge her obligation that she couldn't pay her bills. They didn't put on any evidence that getting to work was more difficult or more onerous. None of the evidence... I thought the court... Can I ask a clarifying question? I thought the court did take those pieces of evidence into account, so I didn't see it as a per se rule being applied. Can you explain to me why I'm wrong? Well, I think you're wrong. I think you're correct that the court addressed them. I think the problem was that that was based on no real evidence that was in the record. It was based on assumptions, speculations, conjectures, that maybe those weren't good enough reasons, but there was no hard evidence to support that. And the law in this circuit is, as it is in other circuits, that suppositions, conjectures, speculation alone are insufficient to support any kind of a finding, even one that's made, in this case, by the trier of fact, it was the district court. If the defendants had put on evidence that, hey, you know, here's the bus routes, here's the time the bus runs, or yeah, you really didn't have any problem paying your bills, did you, because you never got taken to court, then maybe that's a different analysis. But there was nothing in the record to support any of that. It was all basically coming to the conclusion that, well, probably just shouldn't have left that job, despite the fact that there were justifiable reasons for doing so. And I think that leads us to sort of the next part of this analysis, then what happens when that happens? Does it cut off all damages, all back pay? Ms. Reitzel was out of work for six weeks. She spent that six weeks looking for another job. And that's my problem, counsel. If we go the other way, the rules the other way would be also ridiculous, because she said she, you know, she needed a place that she could walk to.  Like, I mean, that can't be a rule that, you know, you could only demand jobs that you could walk to, right? That is a single piece of her justification.  There were seven or eight reasons she gave that need to be looked at in their totality. I agree. But the bottom line is there shouldn't be any bright, round rules either way. No, I think the, you're correct. It requires, as the district court, in this case, Judge Silver in the finical case that we cite, which cites EEOC v. Paperlift, says you have to look at this, the unique and special circumstances for that particular plaintiff. And again, if a defendant didn't like and didn't believe that any of those were valid reasons, then it was, the burden was on them to put that evidence on. And the record doesn't have anything to challenge this. Well, what about that reason about you need a job that she could walk to? That doesn't seem like a legitimate reason. If that were the only reason, if that were the only reason, then that might be problematic. But she doesn't have a driver's license. She doesn't own a car. There was no testimony that a bus ran in front of her house every day at nine o'clock, eight times a day. For all we know, it maybe only came on Sunday. We don't know that. And the point is, that's not her burden. That's the defendant's burden to put on that evidence, and they didn't do it. Can I ask, counsel, one of the concerns that came up for me was it seemed as if the back pay and the front pay analysis ended up merging in the sense that the failure to look for another job after, is it FWC?  Foreclosed both back pay, you know, from the cutoff after December, as well as a front pay claim. Was there a problem with the district court merging those two analyses together? Was the court supposed to apply it differently? There was confusion, Your Honor. And I think the confusion stemmed from the fact that Dr. Buehler performed his analysis on front pay calculations two years before the trial was held. So front pay had migrated into back pay by that time. And when the judge was looking at and considering that testimony, then what was happening at that point in time was confusion, I think, because he was looking at the equity of front pay and whether or not that was an appropriate remedy as opposed to reinstatement, which I think the parties conceded under the circumstances was probably not appropriate. But that portion of front pay for those two years had migrated into back pay, which was the problem with applying a discount factor to it, first of all. Secondly, I think when we get to the point of the offset, you know, what is the offset? Ms. Reitzel was not asking that she get 100 percent of the concentric lost benefits for those six weeks. She said, look, the only thing we know here is how much I was getting capital. That we know. And so set that off and extrapolate that going forward until there's some other evidence. Again, that's not her burden. Burden's on the defendant to put on that evidence. So I think, again, in summary, I think we just think it's too draconian to have a hard and fast rule by itself when you leave, you have no right to back pay at all. Can I ask, on that question of the discount rate, given this confusion, can we say it was abusive discretion that, you know, that the district court didn't properly do that discount rate, given it seems like all sides were confused by that, right? I think we would say it's clear error. I think it's clear for two reasons. I think it's clear error on the fact that the statute specifically talks about, you know, and in fact the Ninth Circuit model and jury instructions talk about application of a discount rate and under what circumstances it applies for future benefits. Again, I think part of the confusion stemmed from the passage of time between Dr. Buehler's report and when the trial actually took place. I'd like to talk briefly about the attorney's fees issue because I think it's equally significant here. When you have a statute like 2617 that talks about paying attorney's fees, they shall be paid in addition to the amount that is set forth. That language is unique to the fee-shifting provisions under Title 29. It doesn't appear in Section 1988 under Title 42. Congress must have had a reason to put that phrase in there, and I think the cases talk about the justification for looking at fees given the circumstances of making whole a plaintiff who loses her income in the employment context under, whether it's the FMLA or the should be the one that Judge Easterbrook discussed at length in the Cuff case, which we cite. It really makes sense to not look at the disparity between the amount that's in controversy and, frankly, the amount that's recovered versus what was necessary to generate that result. And again, cutting off attorney's fees as of the date of the trial we think was an abusive discretion for the reasons we discuss in our brief about this was not an offer that was made pursuant to Rule 68. It was an offer that was made on the eve of trial. It did not begin to cover the attorney's fees and costs that accrued to that date. The Aliferki case that we cite is directly on point about why that offer was of no value to Ms. Wrightsell at that point in time. So we ask the Court to basically not give So that statute says it's about reasonable attorney's fees. So why isn't it reasonable to say if you unjustifiably prolong litigation, you shouldn't be paid for it? Well, that's the rub. It wasn't unjustifiably prolonging litigation. The record reflects very clearly that we had reached out to the defendant from the very beginning of this case to my declaration that appears in the record of our efforts to get an offer. And we didn't get any offer until basically the eve of the first trial before it was moved. Right. But why couldn't the district court take into account the, in any event, the settlement offer in determining what fees were reasonable? There's nothing that precludes the district court from considering that, is there? It can consider it. But again, I think to the extent that it used it as a hard stop to cut off all fees, including the fees occurred during the course of the trial itself that resulted in plaintiff getting liquidated damages, we think there's an abuse of discretion. I'd like to reserve the remainder of my time. All right. Thank you, counsel. Good morning, Your Honors. My name is Aaron Duell. I represent the Appleeys Concentric Healthcare Solutions and Kyle Silk. I'd like to begin with the mitigation issue. Ms. Wrightsell asks to be compensated like an account manager at Concentric when she chose to work as a server and bartender at Clancy's Pub. Awarding Ms. Wrightsell any damages after she voluntarily left substantially equivalent employment at Fundingwell Capital would be inconsistent with the compensatory aims of the Family and Medical Leave Act. Well, counsel, was that position consistent with the one she had before? Was it equivalent? It was substantially equivalent. Substantially equivalent? Why is that so based on the justification she gave for not remaining at that position? Well, first, Your Honor, I would like to note that that substantial equivalent employment is not challenged by Ms. Wrightsell in this case. Well, but the whole mitigation inquiry is whether or not the justifications that she gave for not remaining at that employment allows for her to continue to receive benefits. Yes, Your Honor. This circuit has affirmed a district court's finding that a job is substantially equivalent when it's comparable. And in this case, the district court found that there were many similarities between Fundingwell Capital job and her job at Concentric, including job title, base pay, responsibilities, and commission availability. I'd also like to address the argument that the appellees are seeking a per se rule. That's not the case. And the district court didn't find that a per se rule was appropriate. The Ms. Wrightsell would have obtained another substantially equivalent job after she left Fundingwell Capital, then perhaps she would be entitled to back pay again. But those aren't the facts of this case. Ms. Wrightsell stated that she left Fundingwell Capital. The court found that she didn't have a sufficiently good reason for that. And she stated that she knew that she would be unemployed for a period of time when she left Fundingwell Capital. She stated that she looked for any job, specifically any job that looked interesting to her and that was potentially within walking distance. And once she obtained the job at Clancy's, she testified that she no longer looked for any employment whatsoever after that. Well, counsel, can we take off one thing? Wasn't there a clear error in applying a discount rate to back pay? No, Your Honor, because the district court didn't find that a discount rate is necessarily appropriate as a matter of law to back wages. The district court was determining damages as the fact finder. And the record shows that a reasonable fact finder could have understood Dr. Bueller to be testifying that it was appropriate to apply a 1.5% discount rate to Ms. Wright's back wages in 2018. How? What was the language that would support that conclusion? What's the language? It was actually an exhibit that was admitted by plaintiffs. It was a chart created by Dr. Bueller that had a column that stated discounted at 1.5%. But he was referring to front pay in those columns, not back pay. And I think there's a part of the, I mean, this might stem from the confusion that counsel was alluding to, but it just doesn't make sense to me, at least, that a discount rate should be applied to back pay when it's a forward-looking, present value of future earnings type of calculation. And I understand that it's not typical to apply a discount rate to back pay. As I stated – Is there any case that you can cite in which a court has applied a discount rate to back pay? I don't have a specific case. I can only rest on the fact that the district court understood Dr. Bueller's testimony and the chart that he, that was admitted into evidence. He understood it to be applying a discount rate of 1.5% to her wages in 2018. What about the award of interest until the date of judgment rather than one year? Was that a correct ruling by the district court? The FMLA requires interest to be calculated at the prevailing rate. It doesn't state anything about whether interest is compounding simple or the time up until it should be calculated. On that issue, Your Honor, again, the – we don't believe that plaintiffs made it clear to the district court as the finder of fact how that interest should have been calculated. And so the district court engaged in its best efforts to calculate that based off of the record that it had in front of it. Can I – so my other – my issue was the equitable relief, the injunctive relief. Given that there was some evidence that the company reached out to Wright Sales' other employers, why wouldn't it have been appropriate to issue an injunction against making sure that her record is wiped clean? I don't believe that there was evidence that Concentric reached out to her subsequent employers. Isn't there something about someone in health care and Concentric reaching out to someone about – in her employment or something like that? That was when Ms. Wright Sales was employed by Concentric. The HR person reached out to her health care provider for documentation. Oh, so that wasn't after she was fired, right? Did she – yeah, okay. No, it wasn't, Your Honor. Oh, interesting. Okay. But what about – you know, the court – she had a claim for injunctive relief to purge her personal records and the district court never addressed that, as far as I can tell. Your Honor, the district court found that Ms. Wright Sales was made whole by the award of money damages. But it never specifically addressed the request to purge personnel records, did it? It didn't reference it by name, but it stated that it considered all the injunctive – or all the equitable relief that Ms. Wright Sales was seeking and found that it was not appropriate. As for the equitable relief, that's Ms. Wright Sales' obligation. It's her burden to prove that it is necessary. And she didn't present any evidence that, for example, Concentric was reaching out to her employers or that, during the time period after she was terminated from Concentric, she had any difficulties in finding or being hired because of the contents of her personnel file. Well, I mean, the jury found willfulness on the part of Concentric as part of its jury verdict. Why wouldn't that be a potentially appropriate remedy to purge her records in addition to making her whole in other ways? Your Honor, athletes don't deny that it is potentially appropriate. I think the problem is that the district court should have specifically addressed that issue one way or the other, and we're sort of left to guess at why that particular form of relief wasn't granted or denied. And on that point, again, Your Honor, the district court simply found that it believed that Ms. Wright Sales was made whole by the monetary damages and that it wasn't necessary or appropriate to award any equitable relief. So can we talk about the attorney's fees? I, too, had a little bit of concern about the cutoff, particularly where plaintiffs prevail at trial. And, you know, you have a situation where someone won a verdict and had to go through the process of preparing for that trial and conducting the trial. Was it an abuse of discretion for the district court to have cut things off at the settlement offer date? No, Your Honor, the district court is in the best position to understand the course of the litigation, and it has wide latitude in determining what is a reasonable attorney's fee. And in this case, the district court did give substantial weight to the fact that Ms. Wright Sales would have been in a better position had she accepted that substantial settlement offer than having gone to trial. And as the Sixth Circuit has stated, there's nothing there's nothing that takes out a settlement offer from the broad constellation of factors that a district court can consider in determining a reasonable attorney's fee. Oh, no, I agree. I mean, I think the court can consider it, but it seems wasn't that first offer of $100,000 in total for her fees and attorney's fees. So why would she have been in a better position to take that versus what she received but through the verdict? Because under the fee agreement with her counsel, Ms. Wright Sales was entitled to or I'm sorry, her attorneys were entitled to the greater of one third of Ms. Wright Sales' recovery or the amount of attorney fees awarded by the court. So in other words, if Ms. Wright Sales had accepted the $100,000 settlement offer, she would have received $66,666.67. Having gone to trial, she received more than $1,000 less than that. I mean, so I mean, but you see, I mean, that's a real parse, isn't it? So because of the happenstance and and if and if you grant that the discount rate was an error, let's say, let's assume that, for example, that's going to change both the damages judgment and the liquidation damages and the interest. So is this something that we should send back to for the court to reassess where the attorney's fees award is appropriate? I mean, we're talking about a thousand dollar difference between, you know, this the potential of what the outcome might be at trial versus what she ended up getting. That seems a little tough to me. No, we don't believe that that was the only factor that the court considered in determining the reasonableness of attorney's fees. The court also discussed the settlement offers between the parties and Ms. Wright's settlement offers were substantially higher than the actual value of the case. The court also considered how much Ms. Wright's was actually awarded as compared to what she sought throughout the litigation. May I address the proportionality argument? We disagree that the court employed a proportionality analysis in awarding attorney's fees. A proportionality analysis involves reducing the amount of attorney's fees awarded solely based off of the financial amount at issue. So in Cuff, for example, the employer argued that the attorney's fees should be reduced because the ratio of attorney's fees awarded to the plaintiff compared to what she obtained was far too large. And that's not what the district court did in this case. The district court determined that the fees incurred after March 4th, 2023 specifically were not reasonable because of the rejection of the settlement offer that would have put Ms. Wright's out in a better place. Counsel, can we talk about the fringe benefit rate? The court awarded 13 percent, is that correct? Where in the record is that supported, the 13 percent? The only thing I thought was in the record was the 13.2 percent that Dr. Buehler had listed. Yes, you are correct on that, Your Honor. The district court appeared to round down the 13.2 percent down to the 13 percent. And we believe that that wasn't clear error in this case because it was. I'm sorry, Your Honor. It was not a clear error in this case. Well, how can it not be a clear error if there's nothing in the record to support it? That 0.2 percent can make a difference. True, Your Honor. Dr. Buehler did not provide any rationale for why he used the 13.2 percent rate or why that would be appropriate. And so the district court, in considering his testimony, was empowered to accept or reject as much of his testimony as it found helpful. Well, but there was no challenge to his calculation. That is that's true, Your Honor. And as I previously mentioned, the district court rounded down. And we don't believe that that itself is an abuse of discretion or clear error. It's a problem when there is nothing in the record to support it to me. The final thing I wanted to ask you about was did the parties agree that Section 1961 was a governing statute on interest? The parties do not agree on that, Your Honor. Oh, they didn't. And so what statute did you think was the appropriate statute for the interest calculation? That would just be the general FMLA statute, which requires that the court award interest at the prevailing rate. So how do you determine the prevailing rate, though? The district, you're right, Your Honor, that the district court did look to a statute. I can't recall. 1961. Okay. As for whether, what I think that Your Honor is getting at is whether compounding interest was appropriate. Because 1961 does say that the interest should be compound. Yes, that is true, Your Honor. Section 1961 applies to post-judgment interest, not to pre-judgment interest. Several circuit courts have found that, and the actual text of Section 1961 states that how interest should be calculated on a judgment. That's post-judgment interest, not pre-judgment interest. The court had discretion to determine whether to use simple or compounding interest for pre-judgment. And so what case is that? Just one moment, Your Honor. That's American National Fire Insurance Company, XREL, Tabacalera, Contreras Cigar Company. What's that site? That is 325 F. 3rd, 924. My circuit case? That's a Seventh Circuit case, Your Honor. I sort of thought. So you don't have a Ninth Circuit case that says it's up to the judge to determine whether or not to compound the interest on pre-judgment interest? Only the cases that were cited in our brief, and I don't believe that there was a Ninth Circuit case that we cited on that issue. All right. Thank you, counsel. Can I just ask one more question? Did the district court understand or believe that it had the discretion to decide whether to compound or use simple interest? In the motion to alter and amend the judgment filed by the plaintiff, the district court did state that simple interest was appropriate in this case, for one, because that's what it understood Ms. Wright-Sell to be asking for. And we don't believe that the district court went against established law in affirming its. I think if I remember correctly, the court said it hadn't been properly raised until a reply brief or something or other, I guess. But my question was, did the court approach it as saying, I have an option between simple interest and compound interest, or did it construe it as I must do simple interest? The court did not specifically consider the issue of — in its analysis, it did not note whether simple or compounding interest was appropriate. It awarded simple interest because that's what it understood Ms. Wright-Sell to be seeking. Okay. All right. Thank you, counsel. Thank you, Your Honors. Thank you, Your Honors. Counsel said something that I hope all three of you caught, and that is that when Ms. Wright-Sell left Funding Will Capital, she did not look for or find substantially similar employment. That's the defendant's burden. The only evidence in the record — the only evidence in the record is that there were 52 jobs available that this plaintiff found, applied for, and didn't get hired. There isn't one shred of evidence that there was a single additional job out there anywhere. If there was, I would have expected the defendants to put on evidence about that. That's where, frankly, the analysis went off the rails. That's where we believe the analysis shifted the burden to Ms. Wright-Sell instead of keeping it on the defendants to present that evidence, which they did not do. That's similar to the analysis that was looked at in the NLRB v. Ampersand publication and the Kawasaki Motors v. NLRB and the Thorson case out of the Northern District of Iowa. It was a firm subnominant by the Eighth Circuit. Those cases talk about this type of an issue. ODIMA is very clear where that burden lies. It's a two-part burden. SIAS talks about using reasonable diligence to find substantially equivalent positions, but that's not the burden of any employee. That's the defendant's burden. If you look at some of these other cases where that burden was determined not to be present, they introduced evidence of newspaper articles. They introduced evidence of job postings. They introduced evidence of other things that would demonstrate that there were positions available. Here, there's none of that. I mean, I take it defendant's position is part of the evidence is being able to rely on Ms. Wright-Sell's own statements about, you know, wanting flexibility, transportation near her home, and those issues as a basis to say why she didn't look further out. Why is that inappropriate? Let's not leave out the important part of that. She said she couldn't pay her bills. I don't know any employee that isn't going to go look for another job and leave to go find a better one if they can't meet their living expenses. Also, she had no protective leave. She'd just been fired from a job where she exercised protected leave and was fired because she was absent. So I think you have to look at the totality of these circumstances because I think there are, you know, again, it shows where the analysis fell short. It's not her burden. It's the defendant's burden. Defendants didn't put on evidence, and that's where, you know. She did get a substantially equivalent job, or you just didn't, just disagreed with that? I'm talking about after the six weeks period, following the six week period where she went to Clancy's. She went to work at Clancy's. And. Well, why is that not enough? If she got a job that is substantially equivalent, why? Precisely. Ampersand Publication, Kawasaki Motors, Thorson, they all talk specifically about that job being sufficient. To not cut off. She didn't leave the workforce. She didn't leave the labor market. She worked. That's where the distinction from the Sankster case that they cite out of the Sixth Circuit is very, very different. That employee sat around for eight years waiting for a ruling that she'd be reinstated. That is not what happened here. So, counsel, when is, in your view, when should the back pay have been cut off? At what point should there have been deemed that she had sufficiently recovered from the firing? At what point? When the defendants put on evidence of a substantially equivalent position for where she would have earned money that exceeded the compensation that she received at Concentric. There's no evidence. Are you saying there is no cut off then? So the back pay should have continued up to the time of trial? Is that your argument? That is back pay. Back pay is up until the time judgment is entered. And that is our argument here. $19,978.94, that's the result of the undervaluation of her damages by not using compound interest, by applying the discount rate, and by not using the correct factor for fringe benefits. That's not an insignificant amount of money, especially for a single mom. It's not an insignificant amount of money. What would the damages, back pay damages, have been up to the time of trial? Up to the time of trial, that's the $262,000 amount that we had set forth in our papers. And again, that depends on which scenario we look at here. There were two scenarios. And we did put forward an interest rate calculation. It's in the papers. There's a formula for using compound interest, and it's in there. We told the judge about it. Yeah, the problem is that that's really complicated. You didn't say anywhere, we want compound interest, right? We did. It's in there. We said we want interest using this formula. Yeah, okay. But they're judges. They're not, like, actuarials. They don't know what that formula means. I'm sorry to say. And frankly, it's easily the law clerk that's going to look at that and say, how are they supposed to know that? There's a statute that talks about, and certainly the court had to do that. But that issue was not presented like that. It wasn't. The words compound interest were not used in that context. Here's the formula for calculating interest according to the statute. But the statute talks about compound interest. Absolutely talks about it. Thank you. Thank you, Your Honors. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: RAWLINSON, BUMATAY, SANCHEZ